**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **MEGAN KLEIN**<br>221 Lodestone Court<br>Westminster, Maryland 21158<br>(Carroll County)<br><br>          Plaintiff,<br><br>  v.<br><br>**INSTANT BRANDS, LLC**<br>3025 Highland Parkway<br>Downers Grove, Illinois 60515<br><br>and<br><br>**INSTANT BRANDS, INC.**<br>3025 Highland Parkway<br>Downers Grove, Illinois 60515<br><br>and<br><br>**CORELLE BRANDS, LLC**<br>3025 Highland Parkway<br>Downers Grove, Illinois 60515<br><br>          Defendants. | Case No.: 1:24-cv-00879<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, **MEGAN KLEIN** (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **JENNER LAW, P.C.** hereby submits the following Complaint and Demand for Jury Trial against **INSTANT BRANDS, LLC. INSTANT BRANDS, INC.** and **CORELLE BRANDS, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.      Defendants design, manufacture, market, import, distributes and sells a wide-range of consumer kitchen products, including the subject "Instant Pot Programmable Electric Pressure Cooker," which specifically includes the IP-DUO60 v3 that is at issue in this case.

2.      Defendants tout the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendants' claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, its families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

4.      Defendants knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like him.

---

[1] *See*, e.g. Instant Pot IP-DUO60/80 Owner's manual, pgs. 4, 5 8. A copy of the Owner's manual is attached hereto as "Exhibit A".

5.    Defendants ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers.

6.    As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF MEGAN KLEIN

7.    Plaintiff is a resident and citizen of the city of Westminster, Carroll County, Maryland.

8.    On or about October 6, 2020, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

9.    Defendants designed, manufactured, marketed, imported, distributed, and sold a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

---

[2] *Id.* at pg. 5.

3

10.      Defendants boasts that "cooking with Instant Brands is everyday magic,"[3] and that their products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

11.      Instant Brands, LLC is an Illinois limited liability company with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of the State of Illinois.

12.      Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of both the State of Illinois and the State of Delaware.

13.      Corelle Brands, LLC is an Illinois limited liability company with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515, and as such is deemed a citizen of the State of Illinois.

14.      On June 12, 2023 Defendants commenced a Chapter 11 proceeding. *See In re Instant Brands Acquisition Holdings Inc., et al.* (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim

---

[3] *See* https://www.instanthome.com/about-us

[4] *Id.*

to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; *provided*, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15. This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on October 5, 2023 and October 9, 2023 [Claim No. 0000010564 and 0000010385], respectively. This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation, but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants has sufficient minimum contacts with the State of Maryland and has intentionally availed itself of the markets within Maryland through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

19.    Defendants is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cooker at issue in this litigation.

20.    Defendants aggressively warrants, markets, advertises and sells its pressure cookers as "Convenient, Dependable and Safe,"[5] allowing consumers to cook "healthy, tasty dishes."[6]

21.    For instance, the Defendants claims that its pressure cookers include a "safety feature to disable the cooker" and display light that "flashes 'Lid' if the lid is not positioned correctly." [7]

22.    To further propagate its message, Defendants has, and continues to utilize numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers. For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your New Instant Pot IP-DUO":

---

[5] *See* https://instantpot.com/portfolio-item/lux-6-quart/#tab-id-1

[6] *Id.*

[7] Instant Pot IP-LUX50/60 Owner's manual, pg. 10,

   a.  "The first thing you need to know about your IP-DUO is that **you don't need to be afraid of it**, as many people are afraid of stovetop pressure cookers."[8]

   b.  "With 10 safety features built in, you can use your Instant Pot with confidence, **knowing that it is not going to explode**." [9]

   c.  "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use." [10]

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cookers "10 safety features,"[12] stating that this "new model detects the position of the lid"[13] and " once the lid is locked, and the contents are under pressure, **there's no way to open the pressure cooker**."[14]

24.    According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with "10 proven safety mechanisms and patented technologies,"[15] misleading the consumer into believing that the pressure cookers are reasonably safe for its normal, intended use.

---

[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42 – 0:46

[9] *Id.* at 0:47 – 0:55.

[10] *Id.* 0:56 – 1:08. This apparently suggests that even if the lid is opened while the unit is still pressurized, it will not harm you.

[11] *See* https://www.hippressurecooking.com/

[12] *See* https://www.youtube.com/watch?v=bVA2EqPf0s0 at 1:22 – 143.

[13] *Id.* at 2:26

[14] *Id.* at 6:40

[15] *See* Instant Pot IP-DUO60/80 V2 Owner's Manual, pg. 4.

25.     By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.     Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by the Defendants.

27.     However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

28.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continues to

8

ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers.

32.     As a direct and proximate result of Defendants' concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

33.     Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT ONE: STRICT PRODUCTS LIABILITY
**(All Defendants)**

34.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

35.     At the time of Plaintiff's injuries, Defendants' pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

36.     Defendants' pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendants.

37.     Plaintiff and her family did not misuse or materially alter the pressure cooker.

38.     The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

39.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

    a.  The pressure cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b.  The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

    c.  Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d.  Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

    e.  Defendants failed to adequately test the pressure cookers; and

    f.  Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

40.     Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

41.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems.

### COUNT TWO:  NEGLIGENCE/NEGLIGENT FAILURE TO WARN
**(All Defendants)**

42.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

43.     Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for its intended uses by consumers, such as Plaintiff and her family.

44.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendants knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

45.     Defendants was negligent in the design, manufacture, advertising, warning, marketing and sale of its pressure cookers in that, among other things, they:

    a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

    b.  Placed an unsafe product into the stream of commerce;

    c.  Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

    d.  Were otherwise careless or negligent.

46.     Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market (and continue to do so) its pressure cookers to the general public.

47.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems.

## COUNT THREE:  BREACH OF EXPRESS WARRANTY
### (All Defendants)

48.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

49.     Defendants expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and her family. Moreover, Defendants expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically:

    a. "As a safety feature, the lid is locked and won't open until the float valve drops down."[16]
"

    b. "Instant Pot® has a safety feature to disable the cooker and the display will flash "Lid" if the lid is not positioned correctly."[17]

    c. "Once the lid is locked, and the contents are under pressure, there's no way to open the pressure cooker."[18]

50. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

51. Defendants marketed, promoted and sold its pressure cookers as a safe product, complete with "safety measures."

52. Defendants' pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

53. Defendants breached its express warranties in one or more of the following ways:

    a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendants were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b. Defendants failed to warn and/or place adequate warnings and instructions on its pressure cookers;

    c. Defendants failed to adequately test its pressure cookers; and

    d. Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from its pressure cookers.

---

[16] *Id.* at pg. 9.

[17] *Id.* at 10.

[18] *See* https://www.youtube.com/watch?v=bVA2EqPf0s0 at 1:22 – 143.

54. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

55. Plaintiff's injuries were the direct and proximate result of Defendants' breach of its express warranties.

56. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems.

### COUNT FOUR:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(All Defendants)**

57. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58. At the time Defendants marketed, distributed and sold its pressure cookers to the Plaintiff in this case, Defendants warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

59. Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the warranty.

60. Plaintiff reasonably relied on Defendants' representations that its pressure cookers were a quick, effective and safe means of cooking.

61. Defendants' pressure cookers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

62. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

63.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

64.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems.

## COUNT FIVE:  BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (All Defendants)

65.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

66.     Defendants manufactured, supplied, and sold its pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

67.     Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

68.     Defendants' pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with its use.

69.     Plaintiff reasonably relied on Defendants' representations that its pressure cookers were a quick, effective and safe means of cooking.

70.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

71.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.      That Plaintiff has a trial by jury on all of the claims and issues;

B.      That judgment be entered in favor of the Plaintiff and against Defendants on all of the aforementioned claims and issues;

C.      That Plaintiff recover all damages against Defendants, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for his injuries and suffering sustained because of the use of the Defendants' defective pressure cooker;

D.      That all costs be taxed against Defendants;

E.      Punitive damages, according to proof;

F.      That prejudgment interest be awarded according to proof; and

G.      That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

Respectfully Submitted,

**JENNER LAW, P.C.**

Dated: March 26, 2024                   */s/ Robert K. Jenner*
                                        Robert K. Jenner (Bar No. 04165)
                                        Kathleen R. Kerner (Bar No. 18955)
                                        3600 Clipper Mill Road, Suite 240
                                        Baltimore, MD 21208
                                        (410) 413-2155 / (410) 982-0122 (f)
                                        rjenner@jennerlawfirm.com
                                        kkerner@jennerlawfirm.com

                                        *In association with:*

15

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
Kenneth W. Pearson, Esq. (MN #016088X)
Adam J. Kress, Esq. (MN #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

*Attorneys for Plaintiff*

16